IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY LYNN STAUDT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | Civil Action No. 10-1251 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 29th day of March, 2012, upon consideration of Defendant's Motion for Summary Judgment (document No. 12) filed in the above-captioned matter on April 4, 2011,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 10) filed in the above-captioned matter on March 4, 2011,

IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further

evaluation under sentence four of 42 U.S.C. § 405(g) in light of this order.

I.  **Background**

On July 17, 2007, Plaintiff Kelly Lynn Staudt filed her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Specifically, Plaintiff claimed that he became disabled on January 1, 2001, due to "depression and severe mood swings." (R. 85-91, 99).

After being denied initially on December 10, 2007, Plaintiff submitted a request for a hearing before an Administrative Law Judge ("ALJ"), and obtained a hearing on June 17, 2009. (R. 54-58, 23-51). In a decision dated November 5, 2009, the ALJ denied Plaintiff's request for benefits. (R. 10-19). The Appeals Council declined to review the ALJ's decision on July 23, 2010. (R. 1-3). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

II.  **Standard of Review**

Judicial review of a Social Security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support

the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial

gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for

4

disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. § 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in

determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 17, 2007, the date she applied for SSI. (R. 12). At Step Two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of depressive disorder, bipolar disorder, anxiety disorders, obesity, and a substance addiction disorder. (R. 12-13). He found that Plaintiff's hepatitis C, hypothyroidism, low back pain, and asthma did not constitute severe impairments. (Id.). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 13-14).

The ALJ found that absent "abuse of alcohol,"[1] Plaintiff would be capable of performing simple, unskilled work at any exertional level. (R 14). Further, the ALJ asserted that as a result of Plaintiff's active and continuing substance abuse, she would be unable to maintain regular attendance on the job. (R. 15). Based on her RFC, the ALJ determined that Plaintiff could not return to her past relevant work. (R. 18). No vocational expert ("VE") was called upon for Step Five of the sequential

---

[1] Presumably, the ALJ meant abuse of drugs or narcotics, as the evidence is that Plaintiff abuses heroin (and sometimes cocaine), not alcohol.

6

evaluation process. Instead, the ALJ employed the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2 (the "Grids"). Based on the ALJ's finding of Plaintiff's tendency for absenteeism as a result of her substance abuse, he determined that a finding of "disabled" would be appropriate under Section 204.00 of the Grids considering her substance abuse. (R. 19). However, the ALJ also found that, if Plaintiff were to attain sustained abstinence from substance abuse, she was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (R. 19). Accordingly, he found that Plaintiff's abuse of substances was a factor material to the determination of disability and that Plaintiff is therefore not disabled. (R. 19).

## IV. Legal Analysis

Plaintiff raises several arguments as to why the ALJ's decision must be remanded. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that substantial evidence does not support the ALJ's decision. Specifically, the Court finds that the ALJ committed errors in determining whether Plaintiff's substance abuse was a contributing factor material to the determination of disability, which, in turn, caused errors in his determination of Plaintiff's RFC and his use of the Grids. Accordingly, the Court will remand this case for re-evaluation.

When an ALJ finds that there is medical evidence that a claimant has a substance abuse disorder, the issue for consideration is whether the substance abuse is a contributing factor material to the determination of disability. See 20 C.F.R. § 416.935. The "key factor" in determining whether drug addiction is material to a determination of disability is whether the claimant would still be found to be disabled if he or she stopped using drugs. See id. at § 416.935(b)(1). The focus of the inquiry is on the limitations that would remain if the substance use ceased, and whether those limitations are disabling, regardless of their cause. See id. at § 416.935(b)(2). See also Ford v. Barnhart, 78 Fed. Appx. 825, 827 (3d Cir. 2003). In other words, in order to be found disabled, a claimant must have a disabling condition independent of his or her drug abuse. Although an ALJ must identify at least some medical evidence supporting the conclusion that a claimant would no longer be disabled absent the drug use, see Sklenar v. Barnhart, 195 F. Supp. 2d 696, 700 (W.D. Pa. 2002), such a conclusion need not be based on expert psychiatric opinion evidence. See McGill v. Commissioner of Soc. Sec., 288 Fed Appx. 50, 53 (3d Cir. 2008).

The problems with the ALJ's decision seem to stem from his deviation from the regular procedure in making this determination. The SSA's internal policy manual, the Hearings,

Appeals, and Litigation Law Manual ("HALLEX"), provides that, in deciding whether a claimant's substance abuse is a contributing factor material to the determination of disability, an ALJ should first determine whether the claimant would be disabled even taking into consideration his or her substance abuse, following the five-step sequential process set forth above. See HALLEX I-5-3-14A(V)(B)(1). If the claimant would not be disabled even considering his or her substance abuse, no finding is needed as to whether the abuse is a material contributing factor. If the claimant would be disabled, the ALJ is to determine whether there is medical evidence of substance abuse and, if so, to determine whether the abuse is a contributing factor material to the determination of disability.

As discussed above, this entails a determination of which limitations upon which the disability determination was based would remain if the claimant stopped using drugs or alcohol and whether these remaining limitations would still be disabling. See id. at (V)(B)(2) and (3), (V)(D). In other words, the ALJ is to undertake a two-part analysis. First, he or she must employ the ordinary five-step sequential process to determine whether the claimant is disabled. Next, if the claimant is disabled, and if there is medical evidence of substance abuse, the ALJ must re-employ the sequential method to determine whether the claimant's limitations that would remain after

factoring out his or her substance use would still be disabling. See Lang v. Barnhart, 2006 WL 3858579, at *3 (W.D. Pa. Dec. 6, 2006).

The ALJ here did, in fact, first determine that Plaintiff would be disabled, considering her substance abuse, and then determined that her limitations would not be disabling if she ceased her substance use. However, rather than first applying the five-step sequential method solely to Plaintiff's limitations considering her substance abuse, and then re-applying it to her remaining limitations, he intermixed the analysis into one five-part determination. While this probably would not constitute reversible error in and of itself, this intertwining of the analysis seemingly led to errors that do require remand.

First, the method by which the ALJ analyzed this case makes it difficult for the Court to determine exactly how the ALJ determined Plaintiff's RFC and whether his determination is supported by the record. He actually found the limitations that Plaintiff would have if she ceased her substance abuse (which he mistakenly refers to as alcohol abuse several times throughout his decision) before determining her limitations considering her heroin and cocaine abuse. The only limitation found by the ALJ, if Plaintiff were to cease her drug use, is that Plaintiff is

limited to simple, unskilled work. (R. 14) After making this finding, he stated:

> In addition, as a result of her active and continuing substance abuse, claimant is unable to maintain regular attendance on the job – supporting the conclusion that substance abuse is a factor material to the determination of disability.

(R. 15). The ALJ therefore found that the *only* limitations Plaintiff would face, even if she continued to abuse heroin and cocaine, was the limitation to simple, unskilled work and jobs not requiring regular attendance and that, if Plaintiff ceased her drug use, the only change to her RFC would be that she could maintain regular attendance. Even if either of these RFC determinations could be supported by the record, which seems unlikely, the Court cannot determine whether substantial evidence supports these findings based on the ALJ's discussion.

The problem started in that the ALJ never accurately determined Plaintiff's RFC even considering her substance abuse. The record is replete with limitations beyond those found by the ALJ which he failed to adequately address. Plaintiff's treating primary care physician, Dr. Kristen Sanfilippo, provided specific opinions regarding Plaintiff's physical and mental limitations. (R. 492-501). These included sitting and standing restrictions, lifting restrictions, pushing and pulling restrictions, postural limitations, and environmental restrictions. (R. 493-95). Dr. Sanfilippo also opined that

Plaintiff had only fair concentration and attention, fair ability to respond to work stressors, and poor ability to complete a work day without interruptions from psychological symptoms and to deal with the public. (R. 499-500). The ALJ, while he did address Dr. Sanfilippo's opinions, did not address these specific limitations. Instead, he stated that "[i]t appears that the above noted limitations were based on her emotional and physical problems as well as her pattern of substance abuse." He further stated, "Dr. Sanfilippo found severe limitations, as I do here, which limits the claimant to simple, unskilled work." (R. 17).

Likewise, the consultative examiner, Charles M. Cohen, Ph.D., and the non-examining state agency reviewing consultant, Arlen Rattan, Ph.D., both found various moderate limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, interact with others in the workplace, respond appropriately to work pressures and changes, maintain attention and concentration for extended periods, maintain attendance and punctuality, complete a normal work day and week without psychological interruptions, and perform at a consistent pace. (R. 153, 155-56). In addition, Dr. Cohen opined that Plaintiff had marked limitations in her ability to interact appropriately with the public. (R. 153). The ALJ did not

directly address these limitations, finding only that these examiners found severe limitations, as he did. (R. 17).

The initial problem with this analysis is that the ALJ failed to first determine how these opinions affected Plaintiff's RFC even including her substance abuse. While it is true that he found Plaintiff to be disabled considering her substance abuse in any event, the failure to properly determine her RFC makes it impossible for the Court to find that substantial evidence supports the ALJ's findings. In applying the five-step sequential process while still considering Plaintiff's drug abuse, the ALJ was required to determine the proper RFC and to discuss the medical evidence and opinions in the record in making this determination. His failure to do so created a situation where the RFC did not encompass all of the restrictions in the record, nor does the ALJ explain whether this was intentional.

Again, the only limitations in the RFC, considering Plaintiff's substance abuse, was the limitation to simple, unskilled work and jobs not requiring regular attendance. This in no way encompasses the limitations found in the medical opinions. The ALJ was not necessarily required to accept all of these opinions, but he must adequately identify the aspects of the opinions he is accepting and those he is not and explain his reasons for doing so. Since the ALJ did, in fact, find

Plaintiff to be disabled considering her substance abuse, this failure may not have mandated remand in and of itself. However, the failure to properly determine the RFC during the first sequential analysis seems to have also affected the RFC that the ALJ determined assuming Plaintiff stopped her drug use.

After properly finding that there was medical evidence of substance abuse, the ALJ determined Plaintiff's RFC if she stopped her use of drugs. However, this new RFC contained only the limitation to simple, unskilled work. Essentially, then, the ALJ found that the record showed that, while abusing heroin and cocaine, Plaintiff could perform all job functions, except that she could only perform simple, unskilled work, and could not maintain regular attendance. The only limitation that would no longer apply if Plaintiff stopped using drugs, according to the ALJ, was the one limiting her to jobs not requiring regular attendance. The record does not support this, nor did the ALJ properly explain how it could.

As mentioned, Dr. Cohen found certain restrictions to Plaintiff's ability to perform work-related functions. He examined Plaintiff during a period of alleged sobriety. Indeed, the ALJ relied heavily on Dr. Cohen's opinion in determining that Plaintiff could engage in work-related activities if she ceased her substance use. However, he never discussed the limitations that, in Dr. Cohen's opinion, applied even during

this period of sobriety. The limitation to simple, unskilled work in no way encompassed the restrictions found by Dr. Cohen. While it may be that Dr. Sanfilippo's opinions applied only during periods of substance abuse, Dr. Cohen's expressly did not. The ALJ did not discuss this matter in any way, nor did he discuss the impact of sobriety on the state agency reviewer's opinions in any detail.

The Court is left, then, with trying to determine whether "simple, unskilled work" is meant to encompass the restrictions opined by the various medical sources, or whether those opinions were rejected. The ALJ seems to imply that he incorporated them, but his limited RFC finding does not do so. More analysis is needed for the Court to properly review this finding. The Court emphasizes that, following the HALLEX procedure, the ALJ should first determine the RFC even with substance abuse and then more specifically explain how he re-determined the RFC having factored out substance abuse. In no way is the Court stating that the ALJ is required to accept any of the specific limitations suggested by any of the medical experts. The ALJ must, however, adequately explain how he has considered them in making his findings.

The other problem created by the ALJ's deviation from the ordinary procedure is that he improperly relied on the Grids. The Third Circuit Court of Appeals has held that it is improper

15

for an ALJ to rely *solely* on the Grids at Step Five to determine whether a claimant could perform any substantial gainful activity where that claimant had nonexertional limitations. See Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000); Poulous v. Commissioner of Soc. Sec., 474 F.3d 88, 94 (3d Cir. 2007). The Court in Sykes explained that "in the absence of a rulemaking establishing the fact of an undiminished occupational base, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines [alone]." 228 F.3d at 261. After Sykes, the SSA issued Acquiescence Ruling 01-1(3), directing that where an individual has a nonexertional limitation, an ALJ cannot rely exclusively on the Grids as a framework for decision-making and must instead:

> (1) Take or produce vocational evidence, such as from a vocational expert, the DOT, or other similar evidence (such as a learned treatise); or
>
> (2) Provide notice that [the ALJ] intend[s] to take or [is] taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational base, and allow the claimant the opportunity to respond before [] deny[ing] the claim.

AR 01-1(3), 2001 WL 65745 at *4 (S.S.A.).[2]

---

[2] The SSA carved an exception explaining that the Ruling did not apply to claims where an ALJ relies on a Social Security Ruling ("SSR") "that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects the claimant's occupational

16

Here, the ALJ expressly indicated that, in regard to Plaintiff's RFC considering her substance abuse, her ability to perform work had been compromised by nonexertional limitations. He then applied the Grids anyway and found Plaintiff to be disabled. As noted, the record appears to contain not only the nonexertional limitation found by the ALJ, but also additional nonexertional limitations, during Plaintiff's periods of substance abuse. The Grids should not be employed in such a situation. The ALJ did not explicitly indicate that he re-applied the Grids in determining that Plaintiff was not disabled based on her RFC assuming abstinence from using drugs. Regardless, as discussed, there are most likely nonexertional limitations that need to be included in that RFC as well. The use of a VE would clarify this issue immensely, and one should be utilized on remand.

Frankly, it appears likely from the record that Plaintiff's substance abuse is a contributing factor material to the determination of disability and that she is not disabled. However, the Court must evaluate the reasons given by the ALJ and not evaluate the evidence on its own. See Fargnoli, 247 F.3d at 44 n.7 ("The grounds upon which an administrative order

---

job base." AR 01-1(3) at *4. If an ALJ chooses to rely on an SSR to support the finding that jobs exist in the national economy that an individual can perform, he or she must cite to the SSR in the determination or decision. Id. The ALJ relied on no such SSR here.

must be judged are those upon which the record discloses that its action was based.")(quoting SEC v. Chenery Corporation, 318 U.S. 80, 87 (1943)). The errors discussed above preclude the Court from determining whether substantial evidence supports the ALJ's decision.

## V.  Conclusion

As noted, the Court is unable to find that substantial evidence supports the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order. While the Court has not reached all of the issues raised by Plaintiff, the ALJ should be conscious of these issues on remand so as to alleviate the need for any additional remand.

> s/Alan N. Bloch
> United States District Judge

ecf: Counsel of record